**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHIV PATEL, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>ST. JOHN'S UNIVERSITY,<br><br>       Defendant. | CASE NO. |

**<u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>**

Plaintiff SHIV PATEL ("Mr. Patel"), on behalf of himself and all others similarly situated, hereby brings this Class Action Complaint against Defendant St. John's University ("St. John's" or "Defendant"). Mr. Patel makes the following allegations based upon actual knowledge as to his own acts, and upon information and belief, including the investigation of counsel, as to all other matters.

**NATURE OF THE ACTION**

1. There is no question that the on-campus college experience—including the many benefits of in-person classroom education—is more valuable to the student than purely online learning. Students and their families pay—and borrow—hundreds of thousands of dollars for the on-campus college experience, because they provide the students the opportunity to engage directly with their professors, to meet and share experiences with diverse and accomplished individuals from around the world, to join student clubs, to build professional networks, and to experience the campus environment. Learning that takes place solely online offers none of these opportunities. For these reasons, many students spend tens of thousands of dollars to attend private colleges and universities that afford the opportunity for in-person college educations. In the spring of 2020, these choices were taken away from students at St. John's.

1

2. In March 2020, in response to the outbreak of the SARS-CoV-2 virus, the virus that causes the COVID-19 disease (the "COVID-19 pandemic"), St. John's, like many other universities, moved all learning online for the remainder of the Spring 2020 semester and required students living in on-campus housing to move out and leave campus.[1] St. John's closed off access to all buildings, including residence halls, the dining hall, libraries, and recreation services, and ordered students to "refrain from coming to campus." All university in-person events were cancelled for the spring semester.

3. As a result, all on-campus classes, housing, dining, and other services and amenities are no longer available to the students.

4. Despite the harsh reality that students could no longer live and learn on campus, St. John's refused to refund the fees tied to on-campus services and amenities that all students are required to pay each semester. In addition, by requiring students to pay (and many to borrow) full tuition for the Spring 2020 semester, St. John's did not take into account the diminution in value of the education the school is now offering compared to what students were promised.

5. Accordingly, the students have lost (and continue to lose) the benefits of the bargain for services and education they paid for but can no longer access or use.

6. St. John's has left its students, many of whom have borrowed huge sums to obtain an on-campus education, with the burden of finding alternate arrangements to take classes remotely, while retaining the students' money that the students need to pay for alternative arrangements, expenses, or to pay down their student loans.

7. While partial refunds for services not provided will not replace the lost on-campus experience, they would provide Mr. Patel and the putative Class Members with some financial relief as many prepare to graduate into a depressed job market.

---

[1] An exception was made for students unable to leave campus.

8. Instead, St. John's is unjustly enriched as it will reap the consequential benefits of revenue while students are deprived of much needed cash.

9. It cannot be disputed that the circumstances underlying this legal action are unfortunate and unprecedented. However, the students did not choose this circumstance, and they certainly did not agree to pay for tuition and fees when learning remotely without the use of the services for which they paid handsomely.

10. It is unfair and unlawful for St. John's to retain tuition and fees for services not being provided and to pass the losses on to the students and their families.

11. Accordingly, St. John's has improperly retained monies paid by Mr. Patel and the other putative Class Members for (1) the University General Fee and the Student Government Activity Fee (the "Fees"); and (2) the reduced value of tuition for moving all classes online, including classes that students specifically chose to take in-person, while not providing Mr. Patel and the other putative Class Members the benefits for which they paid. St. John's retention of these funds is unlawful and unfair.

12. Mr. Patel brings this class action for damages, restitution, and declaratory relief resulting from St. John's retention of the full tuition and Fees paid by Mr. Patel and the other putative Class Members for services not being provided. Specifically, this lawsuit seeks disgorgement of the pro-rated, unused amounts of the Fees that Mr. Patel and other putative Class Members paid, but for which they (or the students on behalf of whom they paid) will not be provided the benefit, as well as a partial tuition reimbursement to compensate for the diminished value of remote instruction along with the portion of the tuition that funds on-campus services, facilities, and extra-curricular activities that ceased when St. John's closed the campus.

## PARTIES

13. Mr. Patel is a citizen of New York, residing in Williston Park, New York. He is a St. John's undergraduate student who has been forced to move all of his classes online and refrain from visiting campus

14. Mr. Patel enrolled at St. John's for the "Spring 2020 semester," which was scheduled to run from approximately January 22, 2020 through May 13, 2020. Mr. Patel has not had access to campus since February 28, 2020, because the university closed for spring break from March 2-7, 2020, and after that the campus was closed due to COVID-19. Mr. Patel paid Fees for the entire Spring 2020 semester, the benefits of which he lost because St. John's closed the campus and cut off access to on-campus services, facilities, and extra-curricular activities.

15. St. John's is a private, not-for-profit university whose principal place of business is located at 8000 Utopia Parkway, Jamaica, New York 11439.

## JURISDICTION AND VENUE

16. Venue is proper in this District because Defendant resides in this district. 28 U.S.C. § 1391(b)(1).

17. The Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and is a class action in which Plaintiff and one or more of the other Class members are citizens of a State different from the Defendant.

18. This Court has personal jurisdiction over Defendant because its principal place of business is within this District.

**FACTUAL ALLEGATIONS**

**A. On-Campus Education**

19. Students who enroll in St. John's on-campus programs and classes do so because it enhances and contributes to the overall educational experience. Students choosing an on-campus learning environment pay for the opportunity to have in-person classes with direct interaction with faculty and on-campus amenities and activities, including the dormitory experience, dining hall, library, gym, pool, sporting events, and other extra-curricular activities.

20. The Queens campus, St. John's primary campus, includes high-tech laboratory and classroom buildings; the main collections of St. John's 1.7 million-volume library; nine dining locations; the D'Angelo Center ("DAC"); and a state-of-the-art athletic arena. St. John's touts that "[o]n campus, students can choose among 180 student clubs and organizations, recreational and dining facilities and a variety of 24/7 activities."[2] Every week, St. John's academic departments would host events on campus, typically during the Common Hour on Mondays and Thursdays from 1:50 p.m. to 3:20 p.m., and students have access to a number of campus-based social activities. St. John's recognizes that "[r]esearch says that an involved student is more likely to feel connected to the institution, continue through graduation, meet new friends, and become an effective leader who will add value to your resume. With over 100 student organizations, major programs, and social activities that take place each semester, you will endure a vibrant campus life experience."[3]

21. The Staten Island campus, while smaller than the Queens campus, also provides an impressive on-campus experience for students. St. John's boasts that the Staten Island campus "offers a small college vibe with all of the resources of a major university."[4] The Staten Island campus includes

---

[2] Queens Campus Life, https://www.stjohns.edu/life-st-johns/new-york-city-your-campus/queens-campus-life (last accessed May 8, 2020).
[3] Campus Activities, https://www.stjohns.edu/life-st-johns/new-york-city-your-campus/queens-campus-life/campus-activities (last accessed May 8, 2020).
[4] Life at St. John's, https://www.stjohns.edu/life-st-johns (last accessed May 8, 2020).

Greek life, large-scale traditions, over 40 student clubs and organizations, a fitness center with state-of-the-art equipment and classes, and campus-based services.

22. St. Johns also closed its Manhattan and Hauppauge, New York campuses.

23. While many St. John's students live off-campus and commute to school, St. John's recognizes that in-person experiences are essential both for students who live on campus and students who live off campus. It offers a variety of resources, including a student activities fair, events, shuttle bus service, and parking, to ensure that students who live off-campus can still obtain the full benefits of an on-campus college experience.

24. Mr. Patel and other similarly situated students did not pay for online-only courses in a fully remote learning environment without access to campus facilities.

25. Several studies have shown that online learning is not as effective as traditional, in-person instruction. For example, a study from the Community College Research Center which compared online and face-to-face course outcomes found that "failure and withdrawal rates were significantly higher for online courses than for face-to-face courses."[5] Those who completed the online courses received poorer grades than students who attended in person.[6] The study concluded that "online courses may exacerbate already persistent achievement gaps between student subgroups."[7] Another study that compared outcomes for students in California community colleges also concluded that "in the short term, course by course, student outcomes are worse in online courses than in traditional courses."[8]

---

[5] Community College Research Center, *What We Know About Online Course Outcomes*, Research Overview 2 (April 2013), https://ccrc.tc.columbia.edu/media/k2/attachments/what-we-know-about-online-course-outcomes.pdf.

[6] *Id.* at 3. Adding controls for student socioeconomic and educational characteristics increased the negative outcomes associated with online learning. *See id.* at 4.

[7] *Id.* at 6.

[8] Hans Johnson and Marisol Cuellar Mejia, *Online Learning and Student Outcomes in California's Community Colleges*, Public Policy Institute of California 1 (May 2014), https://www.ppic.org/content/pubs/report/R_514HJR.pdf.

26. Faculty, academic leaders, employers, and the public remain skeptical about the value of online education.[9] In 2013, a Gallup poll found that "Americans' overall assessment of internet-based college programs is tepid at best." The majority of Americans found internet-based college programs as "only fair" or "poor."[10]

27. In ten national surveys of chief academic officers by the Babson Survey Research Group during the 2002-2015 period, no more than a third reported that their faculty "accept the value and legitimacy of online education."[11] In a 2012 survey of over 4,500 faculty, two thirds reported that learning outcomes for online courses are "inferior or somewhat inferior" when compared to face-to-face courses; with only 6% reporting outcomes for online instruction as "superior or somewhat superior."[12]

28. The Chronicle of Higher Education has also found that online colleges ranked last in terms of "employer desirability of college type"; indeed, online programs were the only type of college found to be undesirable.[13] And a 2013 study found that over half of employers prefer "a job applicant with a traditional degree from an average school over an applicant with an online degree from a top university (just 17 percent say they'd prefer the latter)."[14] Thus, students who receive entirely online

---

[9] I. Elaine Allen, *et al.*, *Online Report Card: Tracking Online Education in the United States*, Babson Survey Research Group & Quahog Research Group, LLC 9 (Feb. 2016), https://onlinelearningsurvey.com/reports/onlinereportcard.pdf.

[10] *See* Lydia Saad, *et al., In U.S. Online Education Rates Best for Value and Opinions; Viewed as Weakest in Terms of Trusted Grading and Acceptance by Employers*, Gallup (Oct. 15, 2013), https://news.gallup.com/poll/165425/online-education-rated-best-value-options.apx.

[11] I. Elaine Allen, *et al., supra* note 9 at 6.

[12] I. Elaine Allen, *et al.*, *Conflicted: Faculty and Online Education, 2012*, Babson Survey Research Group & *Inside Higher Ed* (Feb. 2012), https://files.eric.ed.gov/fulltext/ED535214.pdf.

[13] *The Role of Higher Education in Career Development: Employer Perceptions*, Chronicle of Higher Education (Dec. 2012), https://chronicle-assets.s3.amazonaws.com/5/items/biz/pdf/Employers%20Survey.pdf.

[14] Public Agenda, *Not Yet Sold: What Employers and Community College Students Think About Online Education* (Sept. 13, 2013), https://www.publicagenda.org/reports/not-yet-sold-what-employers-and-community-college-students-think-about-online-education/.

instruction will have "limited labor market opportunities as long as these strong views persist among employers."[15]

29. It is thus no surprise that while St. John's offers numerous online classes, it encourages its students to take advantage of its on-campus amenities and activities.

### B. St. John's Orders Students Home and Closes Campuses in Response to the COVID-19 Outbreak

30. Before beginning the Spring 2020 semester in January 2020, Mr. Patel paid $11,145[16] to St. John's to cover his Spring 2020 tuition at the Tobin College of Business, St. John's business school. Mr. Patel also paid $105 for a Student Government Activity Fee and $320 for a University General Fee. Such Fees are paid by all enrolled at St. Johns campuses.

31. The Spring 2020 Semester began on or about January 22, 2020, just like any other semester, with Mr. Patel commuting to campus for his in-person classes and to participate in campus life. During his freshman year, Mr. Patel took all of his courses in-person on the St. John's campus. Since then, he has chosen to take the majority of his classes in-person. This semester, he was enrolled in three in-person classes out of five, all of which he specifically chose to take on-campus with classroom instruction and the ability to engage directly with professors and other students. Final exams for the semester are scheduled to end on or about May 13, 2020.

32. Mr. Patel, like other St. John's students, relies on access to campus activities and facilities as an important part of his college experience. St. John's students spend hours in the library studying with classmates. Because Mr. Patel lives off-campus, access to the library is crucial during exams because of the peaceful and tranquil studying environment and its close access to classrooms where exams are typically held.

---

[15] *Id.*

[16] Although the Spring Semester tuition at the Tobin College of Business is $21,845, Mr. Patel was awarded a Hugh L. Carey Community Grant in the amount of $625, and was eligible for a Scholastic Excellence Scholarship of $10,500.

33. Students also makes regular use of the DAC, the popular student center that is the pinnacle of campus. Students informally refer to the DAC as the "commuter hall" because it is such an important part of on-campus life for students who live off-campus, and it is of course frequented daily by the thousands of students who live on-campus. The DAC has a cafeteria area with shops where students who purchased a meal plan can use meal credits; a pool table; a computer center; and printing stations. During a normal semester, students use the meeting rooms located in the DAC to work together on assignments and projects.

34. Mr. Patel and other students also typically spend a lot of time socializing and gathering on the lawns and fields of the campus, particularly during the spring semester when the weather in New York is getting warmer. And even commuter students can spend time studying and socializing with students who live on campus in the spacious and beautiful residence halls.

35. But on March 12, 2020, St. John's announced that it would begin remote instruction for all face-to-face and laboratory courses.[17] St. John's required students living on-campus to leave their residence halls, and closed off access to on-campus services and facilities including the DAC, library, athletic facilities, dining facilities, and outdoor spaces.

### C. Despite Closure of Campuses, Students Are Being Charged Full Cost for Tuition and Fees.

36. Mr. Patel and other putative Class Members paid tuition for the right to choose to take courses on-campus, with in-person instruction and access to on-campus facilities for the Spring 2020 semester. He and other putative Class Members paid Fees associated with on-campus facilities and services. Yet St. John's has not refunded Mr. Patel and other Class Members the Fees they paid but can no longer use, or the difference in cost between the in-person education they were promised and paid for, and the online education they are receiving.

---

[17] A Letter from the Division of Student Affairs (Mar. 8, 2020), https://mailchi.mp/stjohns/covid-19-campus-update (last accessed May 8, 2020).

37. St. John's, a well-endowed, Catholic-affiliated private university, apparently expects its students and their families to shoulder the financial brunt of the COVID-19 pandemic alone, notwithstanding that students are the worst positioned to be able to do so.

38. Indeed, more than two thirds of students graduate college with student loan debt. Student loan debt has ballooned to nearly $1.56 trillion dollars, with the average student loan debt for the class of 2018 at $29,200.

39. The average borrower must spend hundreds of dollars per month repaying student loans—averages range from $300 to nearly $600 across surveys—and many borrowers struggle to repay their loans.[18] It is therefore unsurprising that over 10% of borrowers default on their loans.[19] Even among borrowers who remain current on their payments, a 2019 survey found that student-debt holders spent 20% of their take-home pay on their student loans—reducing the amount they can save for retirement, a down payment on a home, unexpected medical expenses, to care for elderly relatives, and other expenses and emergencies.[20]

40. Moreover, students graduating in 2020 will struggle as they face an abysmal job market, whether they took out loans to fund their education. On May 8, 2020, the United States Bureau of Labor Statistics reported that 20.5 million Americans lost their jobs in April 2020, pushing the unemployment rate up to 14.7% from 4.4% in March 2020.[21] Students have already lost on campus jobs or in their college towns, as well as internships that help them build their resumes, due to the pandemic. Now they are preparing to enter a workforce at a time when tens of millions are filing for

---

[18] Nigel Ohiwaya, *These five charts show how bad the student loan debt situation is*, NBC News (April 24, 2019), https://www.nbcnews.com/news/us-news/student-loan-statistics-2019-n997836; *see also* Abigail Hess, *Survey finds that student debt holders spend 20% of their take-home pay on loans*, CNBC (Aug. 8, 2019), https://www.cnbc.com/2019/08/08/student-debt-holders-spend-20percent-of-their-take-home-pay-on-loans.html.
[19] *Id.*
[20] Hess, *Survey finds that student debt holders spend 20% of their take-home pay on loans*, *supra* note 21.
[21] https://www.bls.gov/news.release/empsit.nr0.htm (last accessed May 8, 2020).

unemployment. The Class of 2020 is graduating into the worst job market in a generation, and there is no telling how long it will take for the country to recover.

41. Yet there has been no indication that the federal government or private lenders will forgive student loans simply because student borrowers saw their educations disrupted by the pandemic and will likely struggle to pay off their student loans. And it would be manifestly unjust that students like Mr. Patel and their families should have to shoulder this burden when they have not even received the benefit of the bargain for which they took out those loans in the first place.

### D. Tuition and Fees

42. St. John's offers in-person, hands-on curriculum and classes. Mr. Patel and the putative Class Members paid for access to in-person classes and an on-campus experience.

43. Thus, Mr. Patel and the putative Class Members paid St. John's for, and St. John's, in turn, agreed to provide, services including, but not limited to:

   a. Face-to-face interaction with professors, mentors, and peers;

   b. Hands-on learning and experimentation;

   c. Networking and mentorship opportunities;

   d. Access to on-campus facilities like computer labs, libraries, study rooms, laboratories, fitness centers, dining facilities, student centers, residence halls, and outdoor spaces;

   e. Student government;

   f. Extracurricular activities, groups, and intramurals; and

   g. Student culture, student development, and other similar activities.

44. Mr. Patel and the other putative Class Members paid tuition, the value of which has now been severely diminished, as well as Fees for the Spring 2020 semester.

45. The base tuition at St. John's for a full-time undergraduate student (12-18 credits) at the Queens campus is $20,950 per semester; students at the Tobin College of Business pay $21,845

per semester, and students in the Pharm.D. program pay $23,987 per semester. The base tuition for a full-time undergraduate student at the Staten Island campus is $14,955 per semester; Staten Island campus students at the Tobin College of Business pay $15,850 per semester; and students in the Staten Island 3-year Accelerated Program pay $18,595 per semester.

46. As the research indicates, students who are forced to attend classes online rather than in person are unlikely to receive the same quality of education and experience as they would from online instruction. This has borne out in Mr. Patel's personal experience as he has been forced to transition from taking courses that he specifically chose to take in person to a fully online experience.

47. On top of tuition, mandatory fees for undergraduates include a $105 Student Government Activities Fee and a $320 University General Fee each semester. St. John's claims that the Student Activity Fee is "assessed to all registered students per semester and goes to student organizations in accordance with procedures set by the Student Government."[22] St. John's further states that the University General Fee "is assessed to all registered students per semester and includes but is not limited to the use of athletic facilities, the Counseling Center, Health Services, Library, Career Center, Transcripts and Registration."[23]

48. Mr. Patel and the putative Class Members are entitled to a refund and use of the money that they paid St. John's for on-campus instruction and on-campus experiences. Students like Mr. Patel could use that money to pay for expenses; to defray the costs of lost jobs or internships over the summer; or, for students who took out loans, to reduce their loan obligations.

49. With the academic instruction now entirely online, Mr. Patel and putative Class Members have been and continue to be deprived of the benefits of on-campus learning as set forth above. Yet, St. John's has refused to refund any portion of the tuition, which is not worth as much as

---

[22] University Fees, https://www.stjohns.edu/admission/tuition-and-financial-aid/tuition/university-fees (last accessed May 8, 2020).
[23] *Id.*

Patel and Class Members paid under the assumption of an on-campus experience, or any of the Fees, even though those fees specifically cover on-campus facilities and activities.

50. St. John's has thus retained the value of the monies paid by Mr. Patel and the putative Class Members for tuition and Fees for the Spring 2020 semester, while failing to provide the services for which those monies were paid.

51. Through this lawsuit, Mr. Patel seeks for himself and the other Class Members: (i) Defendant's disgorgement of the unused portion of all Fees for the Spring 2020 semester, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and corresponding campus services ceased being provided (over half of the Spring 2020 semester); and (ii) a pro-rated tuition reimbursement to compensate for the diminished value of remote instruction and the portions of the tuition attributable to access on-campus facilities and extra-curricular activities of which students are no longer receiving the benefit. Mr. Patel seeks return of those amounts on behalf of himself and the Class Members as defined below.

## CLASS ACTION ALLEGATIONS

52. Mr. Patel brings this action on behalf of himself and the following class of persons pursuant to Federal Rule of Civil Procedure 23(b)(3):

> All students who paid, or other persons who paid on a student's behalf, St. John's University any of the following costs for the Spring 2020 semester: (a) tuition and (b) Fees.

53. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff, and any Judge sitting in the presiding court system who may hear an appeal of any judgment entered.

54. Mr. Patel reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

55. The Class meets the criteria for certification under Rule 23(a), (b)(3), and (c)(4).

56. **Numerosity.** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. Although the exact number of members of the Class is unknown to Mr. Patel at this time and can be ascertained only through appropriate discovery, St. John's enrolls thousands of students each semester. Based on these enrollment numbers, there are likely thousands of Class Members.

57. **Commonality and Predominance.** This action involves common questions of law and fact that will drive the litigation and predominate over any questions affecting only individual Class Members. Common questions include, but are not limited to:

   a. Whether Defendant engaged in the conduct alleged herein;

   b. Whether Defendant breached its contracts with Mr. Patel and other Class Members by not refunding them a pro-rated amount of their tuition and/or Fees on account of the closure of Defendant's campuses in the Spring 2020 semester;

   c. Whether Defendant was unjustly enriched by retaining Fees of Mr. Patel and other Class Members without providing the services that the Fees were intended to cover;

   d. Whether Defendant was unjustly enriched by not refunding Mr. Patel and other Class Members a pro-rated amount of their tuition to account for the difference in value between online and in-person education;

   e. Whether certification of the Class is appropriate under Rule 23; and

   f. The amount of damages incurred by Mr. Patel and the Class Members.

58. **Typicality.** Mr. Patel's claims are typical of those of the other Class Members because Mr. Patel and Class Members each paid for certain costs associated with the Spring 2020 semester at

St. John's but were not provided the services that those costs were meant to cover. Mr. Patel and other Class Members suffered damages – the loss of their tuition and Fees paid – as a direct and proximate result of the wrongful conduct in which Defendant engaged. Mr. Patel's claims arise from the same practices and course of conduct that gives rise to the other Class Members' claims.

59. **Adequacy.** Mr. Patel is an adequate representative of the Class because his interests are aligned, and do not conflict, with the interests of the other Class Members. Mr. Patel has retained counsel who are experienced and competent in complex class action litigation, including consumer contract litigation. Mr. Patel and his counsel intend to vigorously prosecute this action for the benefit of the Class as a whole. Class Members' interests will be fairly and adequately protected by Mr. Patel and his counsel.

60. **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Mr. Patel and the other Class Members is relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract
### On behalf of Mr. Patel and the Class

61. Mr. Patel and the Class Members repeat and allege paragraphs 1 through 60 above as if fully alleged herein.

62. Mr. Patel and other Class Members entered into contracts with St. John's, which provided that Mr. Patel and other Class Members would pay monies, and in exchange, Defendant would provide access to an entirely on-campus education and experience, which includes face-to-face academic instruction, along with a host of other educational services and extracurricular activities. Pursuant to these contracts, Mr. Patel also paid Fees for services such as an on-campus gym, student center, and technology access.

63. Mr. Patel and other Class Members fulfilled their end of the bargain when they paid the monies due and owing for the Spring 2020 semester. Defendant did not. Specifically, Defendant failed to provide the agreed-upon on-campus classes and services for which the tuition and Fees were paid for the entire Spring 2020 semester. Accordingly, Defendant breached its contract(s) with Mr. Patel and other Class Members, entitling Mr. Patel and Class Members to reimbursement of the monies paid for the unused days of on-campus classes and services not received.

64. Defendant retained monies paid by Mr. Patel and other Class Members for the Spring 2020 semester on-campus classes and other services for which the Fees were paid without providing them the benefit of their bargain.

65. Defendant's performance under the contracts are not excused because of the COVID-19 pandemic: the relevant contracts provide no such terms excusing performance given nationwide pandemics. Thus, Defendant should have fully refunded the pro-rated portion of any unused Fees, as well as provided a refund for the diminution in value of the education received for online classes.

66. Mr. Patel and other Class Members performed their end of the contract by paying for tuition and/or Fees.

67. As a result of Defendant's breach of contract, Mr. Patel and the other Class Members were damaged financially in that they have been deprived of the benefit of their bargain, as described herein and in amounts to be proven at trial.

## COUNT II
### Unjust Enrichment
### (In the alternative)
### On behalf of Mr. Patel and the Class

68. Mr. Patel and the Class Members repeat and allege paragraphs 1 through 60 above as if fully alleged herein.

69. Mr. Patel brings this claim in the alternative to the breach of contract claim above.

70. Mr. Patel and other Class Members conferred substantial monetary benefits on St. John's by paying their tuition and/or Fees for the Spring 2020 semester.

71. St. John's has accepted and retained those benefits at the expense of Mr. Patel and the Class Members, without providing the services for which such payments were made. As to the on-campus services and activities covered by the Fees, zero benefit was provided during the weeks in the Spring Semester covering closure of St. John's campuses. The tuition benefits were also diminished when students were forced to switch exclusively to online classes.

72. St. John's has been unjustly enriched by retaining the monies paid by Mr. Patel and the putative Class Members for the Spring 2020 semester for services not provided or diminished by campus closure. Equity requires St. John's to return pro-rated amounts of tuition and Fees paid by Mr. Patel and the Class Members as described herein and to be proven at trial.

## PRAYER FOR RELIEF

Plaintiff, on behalf of himself and all others similarly situated, requests that the Court enter judgment as follows:

a. Enter an Order determining at the earliest possible time that this matter may proceed as a class action under Rule 23 and certifying this case as such;

b. Declaring St. John's policies in failing to pay refunds to be in breach of its contracts with students;

c. For himself and each Class Member his or her actual compensatory damages in an amount to be proven at trial;

d. Equitable disgorgement and restitution in an amount to be proven at trial

e. Reasonable attorneys' fees and costs of suit;

f. Pre-judgment interest; and

g. Such other and further relief as this Court deems reasonable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY
ON ALL CLAIMS AND ISSUES SO TRIABLE.**

DATED: May 8, 2020

Respectfully submitted,

 /s/ Laurie Rubinow
Laurie Rubinow
James C. Shah
**SHEPHERD FINKELMAN MILLER & SHAH, LLP**
52 Duane Street, 7th Floor
New York, NY 10007
Telephone: (212) 419-0156
Facsimile: (866) 300-7367
Email: lrubinow@sfmslaw.com
          jshah@sfmslaw.com

Hassan A. Zavareei*
Anna C. Haac*
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: ahaac@tzlegal.com

18

Jeff Ostrow*
Jonathan M. Streisfeld*
Joshua R. Levine*
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
1 West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
Email:  ostrow@kolawyers.com
streisfeld@kolawyers.com
levine@kolawyers.com

Melissa S. Weiner*
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
Email: mweiner@pswlaw.com

**Pro hac vice application to be submitted*

*Counsel for Plaintiff and the Proposed Class*
